# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

FRANKIE HUNTER,

    Petitioner,

v.                                         Case No. 13-mc-39

UNITED STATES OF AMERICA,

    Respondent.
_____/

## OPINION AND ORDER DENYING RESPONDENT'S
## MOTION TO DISMISS

This is an ancillary proceeding to *United States v. Michael Lusk*, No. 09-20314. Petitioner Frankie Hunter seeks to recover $77,488.69 in funds that the government seized from Regions Bank Account # xxxxxx2011 ("the Bank Account"). (Dkt. 8, Pg. ID 36.) On March 31, 2014, the government moved to dismiss his petition. The matter is fully briefed, and no hearing is necessary. *See* W.D. Tenn. Local R. 7.2(d). For the following reasons, the court will deny the government's motion to dismiss.

## I. BACKGROUND

On August 19, 2009, a grand jury indicted Michael Lusk for conspiracy to commit mail, wire, and bank fraud, and for engaging in monetary transactions in criminally derived property. The indictment alleged that the conspiracy began "sometime on or before February 12, 2003" and continued through at least March

2008. In mid-May 2012, Lusk entered into a plea agreement. Pursuant to the plea agreement, Lusk (hereinafter, "Lusk, Sr.") quitclaimed his interest in a parcel of real property located at 4919 Rosebrook, Southaven, Mississippi, ("the Property") to his son, Michael Lusk, Jr. ("Lusk, Jr."). On September 18, 2012, the court sentenced Lusk to the statutory maximum of 60 months' imprisonment.

On April 29, 2013, Lusk, Jr. transferred the Property to Hunter via a warranty deed. Hunter claims that in consideration for this transfer, he agreed to prevent the Property from going to a tax sale, and to provide financial support for the children of Lusk, Sr. (Dkt. # 8-1, Pg. ID 40.) The day after this transfer, Lusk, Sr. gave Hunter power of attorney to care for Lusk, Sr.'s children. (*Id.*) Hunter sold the Property on July 15, 2013, and deposited the proceeds of the sale into the Bank Account. (*Id.*)

On August 16, 2013, the court entered its preliminary order of forfeiture. Approximately one month later, the government moved to amend the preliminary order of forfeiture after it learned that Lusk, Jr. was no longer living at the Property and that the proceeds from the sale were being held in the Bank Account controlled by Hunter. After considering the evidence submitted in the government's motion, which included transcripts of telephone conversations held between Hunter and Lusk, Sr., the court amended the preliminary order of forfeiture to authorize the government's seizure of the Bank Account as substitute assets subject to forfeiture. The government seized the Bank Account on

September 13, 2013.

## II. STANDARD

Federal Rule of Criminal Procedure 32.2(c) allows third parties to file a petition asserting an interest in property that is identified as subject to forfeiture in a preliminary order of forfeiture. The court may dismiss a petition "for lack of standing, for failure to state a claim, or any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009). "For the purposes of the motion, the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A).

Title 21, section 853 allows only two avenues of relief, requiring that the petitioner show by a preponderance of the evidence that either:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6); *United States v. Monea Family Trust I*, 626 F.3d 271, 277

3

(6th Cir. 2010). "[A] third party has no right to challenge the preliminary order's finding of forfeitability; rather, the third party is given an opportunity during the ancillary proceeding to assert any ownership interest that would require amendment of the order." *United States v. Andrews*, 530 F.3d 1232, 1236–37 (10th Cir. 2008). "If the property really belongs to the third party, he will prevail and recover his property whether there were defects in the criminal trial or the forfeiture process or not; and if the property does not belong to the third party, such defects in the finding of forfeitability are no concern of his." *Id.* at 1237 (brackets, ellipsis, and citation omitted).

## III.  DISCUSSION

### A.  Constitutional Standing

At the outset, the court must address the government's argument that Hunter lacks Article III standing to bring his petition. "With respect to Article III standing, . . . a claimant must have a colorable ownership, possessory or security interest in at least a portion of the . . . property." *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998). "[A]n owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *Id.* Although Hunter need not prove the merits of his claim to establish Article III standing, he must establish a facially colorable interest in the seized property." *Id.* at 497–98.

Hunter satisfies this test. It is undisputed that he held the Bank Account

4

solely in his name, thereby giving him both a possessory and ownership interest in the Bank Account at the time the government seized it. Although the government argues that Hunter functioned as a mere nominee of Lusk, Sr. (discussed *infra*), Hunter's possession and ownership interest in the Bank Account is sufficient to establish a "facially colorable interest" in the seized property.

### B. Superior Interest in the Bank Account

The government argues that Hunter cannot establish that he had a "superior interest" in the Bank Account within the meaning of § 853(n)(6)(a) because Hunter acted as a mere nominee of Lusk, Sr.

Normally, a petitioner needs to show that he has both a legal interest in the property and that his interest predates the commission of the acts which gave rise to the forfeiture of the property. *Id.* However, because the government seized the Bank Account as substitute property, the government's interest did not vest until after Lusk, Sr.'s conviction and the court order determining that directly tainted property was out of the government's reach under § 853(p). *United States v. Erpenbeck*, 682 F.3d 472, 477–78 (6th Cir. 2012). In the instant case, because Lusk, Sr.'s conviction became final on September 18, 2012, and the court issued its amended order of forfeiture on September 11, 2013, the government's interest in the Bank Account did not vest until September 11, 2013.

However, the government does not argue that Hunter's interest failed to

5

vest in a timely fashion; rather, it argues that his interest failed to vest at all because he has acted as a mere nominee of Lusk, Sr. "A nominee is 'a party who holds bare legal title for the benefit of others' but does not exercise dominion or control over the property." *United States v. Gamory*, No. 1:08-CR-153-1-TWT, 2010 WL 3880880, at *4 (N.D. Ga. Sept. 28, 2010) (quoting *Black's Law Dictionary* 1149 (9th ed. 2009)). "Nominee in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in, or ownership of, the rights of the person nominating him." *Braxton v. United States*, 858 F.2d 650, 653 n.6 (11th Cir. 1988) (brackets and citation omitted).

Although the Fourth Circuit uses a "dominion and control" test to ascertain whether the petitioner acted as a mere nominee, *see, e.g. United States v. Bryson (In re Bryson)*, 406 F.3d 284, 291 (4th Cir. 2005)*; United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000), the Sixth Circuit looks to state law to determine the nature of a property interest involved in a forfeiture proceeding. *United States v. Smith*, 966 F.2d 1045, 1054 n.10 (6th Cir. 1992); *United States v. O'Dell*, 247 F.3d 655, 680 n.9 (6th Cir. 2001) (applying state law and noting a split with the Fourth Circuit); *see also United State v. Hooper*, 229 F.3d 818, 820 n.5 (9th Cir. 2000) (rejecting the Fourth Circuit's dominion and control test). In this case, given that the Property is located in Mississippi, the court will apply

Mississippi law. See *O'Dell*, 247 F.3d at 680.

Following the court's order for supplemental briefing (Dkt. # 14, Pg. ID 91–92), the government clarified that Hunter has at least a facially valid legal interest in the Bank Account under Mississippi law derived from his sale of the Property via the warranty deed he received from Lusk, Jr. on April 29, 2013. "The government does not dispute that . . . Hunter had a property interest in the account and its contents." (Dkt. # 15, Pg. ID 96–97.)

Instead, by asserting that Hunter acted as a mere nominee for Lusk, Sr., the government challenges whether Lusk is able to show that he had a *superior interest* in the Bank Account pursuant to § 853(n)(6)(A). See, e.g., *United States v. Weiss*, 467 F.3d 1300, 1303 n.1 (11th Cir. 2006) ("A person cannot have a vested interest in property if he is found to be acting as a nominee for persons whose property is subject to the forfeiture."); *Bryson*, 406 F.3d at 291 ("To prevent manipulation of ownership by criminals, we must look beyond bare legal title and whether [the petitioner] had a property interest under state law in determining whether he had a legal interest in the property.") (internal quotation marks omitted); *United States v. 526 Liscum Drive, Dayton, Montgomery County*, 866 F.2d 213, 217 (6th Cir. 1989) ("A failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate [the intent to deprive criminals of the tools and proceeds of their illegal activities]."), rev'd on other grounds by *United States v. James Daniel Good Real Property*, 510 U.S. 43

(1993), as recognized in *United States v. Certain Real Property Located at 16510 Ashton, Detroit, Wayne Cnty., Mich.*, 47 F.3d 1465, 1470 (6th Cir. 1995).

*United States v. Warner*, 968 F.2d 1217, 1992 WL 1632428, at *3 (6th Cir. 1992) (*per curiam*) (unpublished), is instructive. In *Warner*, the Sixth Circuit affirmed the district court's order denying third-party claims to the subject property. Crucially though, the district court had held a hearing pursuant to § 853(n)(5) during which it received evidence demonstrating that despite the petitioners' claim that they were record owners of the subject property, they were "merely straw owners and that the property had actually been purchased and the mortgage payments and taxes had been paid by [the criminal] defendant." *Id.* (quotation marks omitted) For example, the district court found several statements by the third-party petitioners incredible, particularly one petitioners' statement that he paid an $18,000 down-payment for the subject property with his own money, despite making only $3 to $4 dollars an hour at the time. Similarly, the second petitioner testified that "she had no idea where the $18,000 used as a down payment came from." *Id.* After reviewing the record, the Sixth Circuit concluded that "[a]ll of these facts support the district court's conclusion that although appellants . . . were the record owners [of the subject property], they were in reality merely straw owners and the property had actually been purchased and the mortgage payments and taxes had been paid by [the criminal] defendant." *Id.*

8

In the instant case, the matter is before the court on the government's motion to dismiss, therefore all of the facts set forth in the petition are assumed to be true and are construed in the light most favorable to Hunter. Fed. R. Crim. P. 32.2(c)(1)(A); *Salti*, 579 F.3d at 667 n.11. In his petition, Hunter extensively references an affidavit that he attaches to the petition, which explains his version of the circumstances of his ownership of the Property and the government's forfeiture. (Dkt. # 8, Pg. ID 36–37.) In his affidavit, Hunter states that he agreed to prevent the Property from "going to final tax sale" by paying off back taxes on the Property in exchange for the deed. (Dkt. # 8-1, Pg. ID 40.) He anticipated using the funds from his subsequent sale of the Property to provide "financial support[] and school expenses" for Lusk, Sr.'s three children "in order to carry out the agreement he made with . . . Lusk, Sr., and Lusk, Jr." (*Id.*) "The agreement" Hunter appears to reference seems to be the power of attorney that Lusk, Sr. granted Hunter to "care for" Lusk, Sr.'s three children, including Lusk, Jr. (*Id.*) Hunter also attaches an unsworn "summary," which attempts to explain several taped telephone conversations that he had with Lusk, Sr. regarding the use of the funds in the Bank Account. (Dkt. # 8-2, Pg. ID 42.)

The government argues that these statements show that Hunter acted as a mere nominee, receiving directives from Lusk, Sr. regarding how, when, and on what to spend the funds in the Bank Account. However, at this stage in the proceedings, the court must construe the petition in the light most favorable to

9

Hunter. Read in such light, Hunter appears to claim that Lusk, Sr. gave him power of attorney over his children, and that he subsequently decided to use said power to obtain the Property, pay the back taxes, and sell it, all in order to use the proceeds for the benefit of Lusk, Sr.'s children. He denies that Lusk, Sr. managed or directed the use of the Bank Account's funds. It is far from clear that this is what actually occurred, but nevertheless, it is what Hunter claims happened.

*Warner* demonstrates that although a district court may look behind the bare legal title to the property, in the presence of disputed facts, the more prudent course is for the court to hold an evidentiary hearing and make credibility determinations and findings of fact pursuant to § 853(n)(5). Indeed, in many of the cases the government cites as support for its argument that Hunter acted as a mere nominee, the district court held a hearing and received evidence before making a factual finding on the matter. *See Weiss*, 467 F.3d at 1304; *Bryson*, 406 F.3d at 287; *Morgan*, 224 F.3d at 342. At such a hearing, the burden of proof will be squarely on Hunter to demonstrate by a preponderance of the evidence that he was not a mere nominee, and that he held a superior legal interest in the Property. Hunter will be able to testify on his own behalf and to present evidence and witnesses, and the government will be free to present evidence and witnesses in rebuttal. *See* § 853(n)(5). Therefore, because factual disputes preclude a decision on the merits, the court will deny the government's motion to

dismiss.

## C. Bona Fide Purchaser for Value

The government also argues that Hunter does not qualify for relief under § 853(n)(6)(B) as a bona fide purchaser for value, because he did not acquire the Property in an arms-length transaction. Rather, the government asserts that the only value Hunter gave in exchange for the Property was his agreement to prevent the tax sale and to provide financial support for Lusk, Sr.'s children. (Dkt. #9, Pg. ID 66.)

"Federal law controls whether a party qualifies as a [bona fide purchaser] under . . . § 853(n)(6)(B)." *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012) . "[T]he bona fide purchaser exception is derived essentially from hornbook commercial law and reflects the common-law rule that an innocent purchaser for valuable consideration must be protected." *Id.* at 434.

Essentially, the government contends that Hunter obtained the Property through a sham transaction, and that he fully intended to use the proceeds from its sale in accordance with Lusk, Sr.'s directions, as a mere nominee. Again, Hunter tells a different story, claiming that he independently intended to use the funds in the Bank Account to support Lusk Sr.'s children, and that he did not act at the direction or behest of Lusk, Sr. This basic factual dispute regarding what Hunter's intentions were, and what he actually did, will be the subject of the above-mentioned hearing.

11

## IV.  CONCLUSION

IT IS ORDERED that the government's motion to dismiss (Dkt. # 9) is DENIED.

IT IS FURTHER ORDERED that the parties are DIRECTED to appear for an evidentiary hearing on this matter, pursuant to 21 U.S.C. § 853(n)(5), **on September 19, 2014, at 8:30 a.m. in Courtroom #5, on the Third Floor of the United States District Courthouse in Memphis, Tennessee.**  Hunter will bear the burden of proof by a preponderance of the evidence.

                       s/Robert H. Cleland
                       ROBERT H. CLELAND
                       UNITED STATES DISTRICT JUDGE

Dated:  September 4, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 4, 2014, by electronic and/or ordinary mail.

                       s/Lisa Wagner
                       Case Manager and Deputy Clerk
                       (313) 234-5522